[No. A129543. First Dist., Div. One. July 12, 2011.]

CHELSEY BROWN, Plaintiff and Appellant, v.
PHILLIP CRANDALL, as Director, etc., et al., Defendants and
Respondents.

**4**

COUNSEL·

Abigail Coursolle, Alan K. Mason, Jodie Berger, Richard A. Rothschild and Catherine Scott Murphy for Plaintiff and Appellant.

Wendy B. Chaitin and Mary Blair Angus for Defendants and Respondents.

OPINION

**MARCHIANO, P. J.**—Plaintiff Chelsey Brown (Brown) seeks a writ of mandamus compelling defendants Phillip Crandall, as Director of the Humboldt

County Department of Health and Human Services, and the Humboldt County Board of Supervisors (collectively, the County) to offer medical coverage to her and other indigent residents deemed ineligible for the County Medical Services Program (CMSP), in accordance with the County's duty to provide medical care to all indigent residents not otherwise "supported and relieved." (Welf. & Inst. Code, § 17000.)[1] She appeals from a judgment of dismissal entered after the trial court sustained the County's demurrer to her writ petition without leave to amend, concluding she has no standing to enforce the County's duty under this provision. We reverse the judgment because we disagree with the trial court's conclusion that Brown does not fall within the class of persons to whom the County owes such a duty and conclude that she has standing to enforce a public duty under this section as to other indigent residents.

## FACTUAL AND PROCEDURAL BACKGROUND[2]

On August 4, 2008, Brown started a new job and was told her health insurance benefits would begin in six months. To provide for the interim, she purchased a private health insurance policy that covered her through the end of January 2009.

On February 1, 2009, Brown suffered a "pre-stroke/migraine event" and was hospitalized overnight at Mad River Community Hospital in Arcata (hospital), incurring medical bills of more than $11,000. She later discovered that she would not be enrolled in her employer's health plan until March 1, 2009, and that she was uninsured during her hospitalization. Exhausting all avenues of charity care and assistance, she reduced her medical bills to $4,000.

On her doctor's advice, Brown remained off work for a month and returned to full-time work on March 1, 2009. During February 2009, she received a $1,815.20 paycheck and a $996 disability check.

The hospital submitted a claim for CMSP benefits on Brown's behalf.[3] On March 14, 2009, the County denied Brown's claim, finding her ineligible for

---

[1] All undesignated statutory references are to the Welfare and Institutions Code.

[2] As Brown's petition was resolved on demurrer, we set forth the relevant facts as alleged in the operative petition, the attached exhibits, and the matters of which the superior court took judicial notice. (See *Blank v. Kirwan* (1985) 39 Cal.3d 311, 318 [216 Cal.Rptr. 718, 703 P.2d 58].)

[3] The CMSP assists smaller, rural counties with their duty to provide health care to indigent adults. (<http://www.cmspcounties.org/about/history.html> [as of June 12, 2011].) Counties contract with the CMSP Governing Board for the provision of specified health services to eligible persons on a fee-for-service basis. (*Ibid.*; § 16809.) Each participating county certifies

benefits because her income for February 2009 ($2,811.20), exceeded the CMSP limit of 200 percent of the federal poverty level ($1,734 at that time, according to the County's calculations).

Brown requested an administrative hearing to review the County's eligibility determination and contended the County was required to provide medical coverage to her in any case under section 17000. (CMSP Eligibility Manual (Dec. 31, 2008) § 15-011.) At the hearing, Brown maintained that she "spent down part of her retirement funds" at an eligibility worker's direction in order to become eligible for CMSP and that she would not have done so if she had known she would be ineligible "even after liquidating a large amount of her retirement funds." On May 6, 2009, the hearing officer issued a written decision denying Brown's claim and noting: "Humboldt County is not involved in a Residual Program."

On August 3, 2009, Brown filed a verified petition for writ of mandate in the Superior Court of Humboldt County, seeking a writ of administrative mandamus (Code Civ. Proc., § 1094.5) reversing the County's decision and directing it to find her eligible for medical coverage and writs of ordinary mandamus (Code Civ. Proc., § 1085) compelling the County "to cease implementing an income limit of 200% of Federal Poverty Level for medical coverage without first ascertaining the indigent applicant's medical needs" and to provide residual coverage "to indigent county residents not otherwise medically supported."

On September 22, 2009, to comply with section 17000's mandate, the County Board of Supervisors adopted "Indigent Medical Aid and Care Standards" (residual coverage standards) that purportedly "provide a . . . definition of an 'indigent person,' the basic eligibility requirements, and the assistance available to eligible individuals for these rare instances when an 'indigent person' is underinsured or ineligible for Medi-Cal or CMSP." The County did not reconsider Brown's eligibility for coverage under these standards or provide notice of its findings in this regard.[4]

In March 2010, the trial court granted the County's motion for judgment on the pleadings, finding Brown had not alleged sufficient facts to establish standing to seek the writ relief at issue, but allowed her leave to amend her

---

the eligibility of its residents based on uniform criteria established by the Governing Board. (CMSP Governing Board Regulations, as amended Apr. 28, 2005 (CMSP Regs.), §§ 1(f), 5(a), (b), (d), (h)(1).)

[4] Brown does not allege that she sought reevaluation of her claim under the new standards, but her allegations show that the County adopted these standards during, and presumably in response to, litigation seeking such coverage, and the record includes a letter indicating she could amend her petition to assert such an allegation.

petition. Brown filed an amended and supplemental petition for writ of mandamus (amended petition), alleging that she is entitled to reevaluation of her eligibility for benefits under the County's residual coverage standards. She asserted, further, that the County was not implementing these standards and that they were "incomplete under Section 17000" in any case. In addition to the relief sought in her original petition, she sought a writ of mandate ordering the County "to fully implement standards and policies that provide residual benefits under Section 17000 to all applicants excluded by CMSP but who fall under Section 17000."

The County filed a demurrer to the amended petition and a request for judicial notice of the hearing officer's decision, the County's resolution and residual coverage standards, and the CMSP Eligibility Manual.

On June 16, 2010, the trial court sustained the County's demurrer without leave to amend, taking judicial notice of "the documents and regulations set forth in [the County's] request . . . ." The trial court held that Brown had not alleged sufficient facts establishing that (1) she is a person described in section 17000 with standing to proceed under that section; (2) the case raises a question of sufficient public interest to justify an exception to the rule requiring a petitioner to have a beneficial interest in the cause of action; and (3) she has standing to seek a writ of administrative mandamus regarding the denial of eligibility for medical coverage under section 17000, or to seek a traditional writ of mandate ordering the County to create and implement a residual county health program under section 17000. The trial court's findings indicate it accepted the County's arguments that section 17000 does not apply to Brown because (1) the facts alleged show she is not indigent within the meaning of section 17000 and (2) she was supported by a private institution because her bills were reduced from $11,000 to $4,000 under the hospital's charity care/discount program. (See *County of San Diego v. State of California* (1997) 15 Cal.4th 68, 92 [61 Cal.Rptr.2d 134, 931 P.2d 312] (*County of San Diego*) [§ 17000 "creates 'the *residual* fund' to sustain indigents 'who cannot qualify . . . under any specialized aid programs' "].) Additionally, in declining to recognize a citizen's standing to enforce a public duty, the trial court appears to have accepted the County's argument that the "allegations do not suggest a weighty public need."

The trial court entered a judgment of dismissal in favor of the County, and Brown filed a timely appeal from the judgment.[5]

---

[5] An order sustaining a demurrer is reviewable on appeal from the judgment. (*Casterson v. Superior Court* (2002) 101 Cal.App.4th 177, 182 [123 Cal.Rptr.2d 637] (*Casterson*).)

## DISCUSSION

### A. *Controlling Legal Principles*

We review the order sustaining the demurrer de novo, liberally construing the allegations in the amended petition "with a view to substantial justice between the parties." (Code Civ. Proc., § 452; see *Holiday Matinee, Inc. v. Rambus, Inc.* (2004) 118 Cal.App.4th 1413, 1421 [13 Cal.Rptr.3d 766] (*Holiday Matinee*).) We affirm the judgment if the amended petition fails to plead, or the County negates, any essential element, or if the allegations " ' "clearly disclose some defense or bar to recovery." ' " (*Holiday Matinee*, at p. 1421, italics omitted; see *Rakestraw v. California Physicians' Service* (2000) 81 Cal.App.4th 39, 43 [96 Cal.Rptr.2d 354] (*Rakestraw*).) In determining these issues, we accept as true all facts properly pleaded or subject to judicial notice, but not contentions, deductions, or conclusions of fact or law. (See *Evans v. City of Berkeley* (2006) 38 Cal.4th 1, 6 [40 Cal.Rptr.3d 205, 129 P.3d 394].) On appeal, Brown bears the burden of demonstrating that the trial court erred in sustaining the demurrer. (*Rakestraw*, *supra*, 81 Cal.App.4th at p. 44.)

■ A writ petition that reveals a lack of standing to sue "is vulnerable to a general demurrer on the ground that it fails to state a cause of action." (*Carsten v. Psychology Examining Com.* (1980) 27 Cal.3d 793, 796 [166 Cal.Rptr. 844, 614 P.2d 276]; see Code Civ. Proc., § 430.10.) Code of Civil Procedure section 1086 establishes a standing requirement for writs of mandate, providing that such writs " 'must be issued upon the verified petition of the party beneficially interested.' " (*Waste Management of Alameda County, Inc. v. County of Alameda* (2000) 79 Cal.App.4th 1223, 1232 [94 Cal.Rptr.2d 740] (*Waste Management*).) "To establish a beneficial interest, the petitioner must show he or she has some special interest to be served or some particular right to be preserved or protected through issuance of the writ. [Citation.]" (*Ibid.*) A petitioner has no beneficial interest if she will gain no direct benefit from the issuance of a writ and suffer no direct detriment if it is denied. (*Ibid.*) This standard applies to both ordinary mandamus and administrative mandamus. (*Id.* at pp. 1232–1233.)

### B. *Brown's First Cause of Action—Administrative Mandamus*

#### 1. *Brown's Beneficial Interest in a Writ of Administrative Mandamus.*

■ Brown seeks a writ of administrative mandamus reversing the hearing officer's decision and directing the County to find her eligible for coverage. (See Code Civ. Proc., § 1094.5, subd. (a) [issuance of a writ "for the purpose of inquiring into the validity of any final administrative order or decision

made as the result of a proceeding in which by law a hearing is required to be given, evidence is required to be taken, and discretion in the determination of facts is vested in the inferior tribunal, corporation, board, or officer"].) Brown does not challenge the County's denial of CMSP benefits. She focuses instead on the County's alleged failure to provide her residual medical coverage and contends that, in refusing to evaluate her under these standards, the County effectively denied her coverage based on the CMSP income limit, which does not take into account her partial ability to pay.[6] (See § 16809, subd. (d) [a county participating in CMSP "shall not be relieved of its indigent health care obligation under Section 17000"]; *Alford v. County of San Diego* (2007) 151 Cal.App.4th 16, 32 [59 Cal.Rptr.3d 596] (*Alford*) ["[A] flat-income-cap eligibility standard that does not consider an individual's ability to pay all or a part of his or her subsistence medical care is not permitted" (italics omitted)].) She asserts that she is entitled to "a re-evaluation of her eligibility now that [the County] has responded to her claim by enacting standards [for residual coverage]." ▮ We conclude that Brown has a beneficial interest in the issuance of a writ directing the County to provide an eligibility determination under its residual coverage standards and to give notice of its findings. If such a writ issues, she will obtain a direct benefit: evaluation of her eligibility for residual coverage that takes into account her medical needs and ability to afford medical care and, if she meets eligibility requirements, payment of some or all of her medical bills. If the writ is denied, she will suffer a direct detriment in being held solely responsible for bills she alleges she cannot afford to pay without a determination of whether she is entitled to assistance. (*Waste Management, supra,* 79 Cal.App.4th at pp. 1232–1233.) We also conclude that Brown has a beneficial interest in the issuance of a writ compelling a finding of eligibility for residual coverage, to the extent the trial court may deem such a request ripe for decision. Brown alleges that she needs medical coverage for February 2009, and meets the County's eligibility requirements. The writ she seeks would relieve her of all or some of her medical debt, and its denial would preclude such relief.

## 2. *Brown Is a Person Described in Section 17000.*

▮ The trial court decided that Brown has no beneficial interest in writ relief because she "is not a person described in section 17000," effectively concluding that she is not within the class of persons to whom the County owes a duty under that section. We disagree because the County's duty under section 17000 to provide medical care extends to "all incompetent, poor,

---

[6] We do not read Brown's allegation that the County applied an income limit "without first ascertaining the indigent applicant's medical needs" as a challenge to the CMSP income criteria. The CMSP Governing Board, which sets uniform eligibility standards participating counties are required to follow, is not a party to this proceeding. (CMSP Regs., §§ 1(f), 5(a), (b), (d), (h)(1); <http://www.cmspcounties.org/governing_board/regulations.html> [as of June 12, 2011].)

indigent persons, and those incapacitated by age, disease, or accident . . . ." Whether this provision applies depends on an applicant's ability to afford medical care. (*County of San Diego, supra,* 15 Cal.4th at p. 75 [whether "they had insufficient financial resources to pay for their own medical care"]; *Hunt v. Superior Court* (1999) 21 Cal.4th 984, 1013 [90 Cal.Rptr.2d 236, 987 P.2d 705] [an indigent person is an individual " ' "who has insufficient means to pay for his maintenance in a private hospital after providing for those who legally claim his support" ' "].) Throughout her petition, Brown alleges she is indigent and unable to afford her medical care. Specifically, she asserts that her "income for the month of February [2009] . . . was insufficient to pay for her medical bills after she paid for her housing, clothing, transportation, food and basic necessities of life. After meeting her costs for necessities of life for February 2009, [she] had no more than a few hundred dollars left from her income, which was grossly inadequate to pay medical bills or other costs." She alleges, further, that she "does not have friends or family who can support her by paying for her medical needs, and is unsupported by private or public programs or insurance for the month of February, 2009." These allegations establish that Brown is "a person described in section 17000." (See *Committee on Children's Television, Inc. v. General Foods Corp.* (1983) 35 Cal.3d 197, 212 [197 Cal.Rptr. 783, 673 P.2d 660] (*Committee*) [pleading must only "set forth the ultimate facts constituting the cause of action, not the evidence by which [the] plaintiff proposes to prove those facts"].)

*Brown's Alleged Assets, Income, and Insurance*

█ The trial court accepted the County's contention below that Brown is not "indigent" within the meaning of section 17000 because her allegations establish that she returned to full-time work in March 2009, earned a monthly income of $2,811.20, was able to afford private health insurance before February 2009, and was covered by her employer's health insurance thereafter, and has assets in excess of $2,000.[7] We disagree. "[A] demurrer based on an affirmative defense will be sustained only where the face of the complaint discloses that the action is necessarily barred by the defense." (*Casterson, supra,* 101 Cal.App.4th at p. 183.) The allegations on which the trial court relied do not establish as a matter of law that Brown falls outside the scope of section 17000. █ First, the County's duty under section 17000 extends "to all medically indigent residents who do not have the financial ability to pay all or some of the costs of such treatment and are not eligible for other state or federal aid—in most cases, the 'working poor.' " (*Alford, supra,* 151

---

[7] In challenging the demurrer on these grounds, Brown contends the County's standards do not authorize excluding applicants for these reasons, it violated due process by unfairly "invoking unwritten rules of which [she] could not possibly be aware," and it has improperly redefined statutory eligibility criteria. Brown confuses her standing under section 17000 with her eligibility under the County's standards.

Cal.App.4th at p. 19.) "[C]ounties have no discretion to refuse to provide medical care to 'indigent persons' within the meaning of section 17000 who do not receive it from other sources." (*County of San Diego, supra,* 15 Cal.4th at p. 101.) Second, assuming the allegations regarding Brown's income for February 2009 permit an inference as to her monthly salary, they do not compel such an inference to justify a factual determination in this regard at the pleadings stage. Third, the ability to pay for private health insurance does not necessarily demonstrate an ability to pay all of a substantial medical bill.[8] Finally, we are unwilling to conclude as a matter of law that a person who has more than $2,000 in a retirement account can afford subsistence medical care. Indeed, whether a person can afford such care is a factual question that should be decided based on evidentiary proof. Brown is not required at the pleadings stage to include allegations regarding her medical needs or other factors that impact her ability to afford subsistence medical care. (*Committee, supra,* 35 Cal.3d at p. 212.)[9]

*The Hospital Discount*

The trial court also accepted the County's contention that Brown was supported by a private institution because the hospital reduced her medical bills under Health and Safety Code section 127405.[10] (See *County of San Diego, supra,* 15 Cal.4th at p. 92 ["[T]he statute requires a county to relieve and support indigent persons only 'when such persons are not supported and relieved by their relatives or friends, by their own means, or by state hospitals or other state or private institutions.' " (italics omitted)]; *Alford, supra,* 151 Cal.App.4th at p. 19 [Welf. & Inst. Code, § 17000 "impos[es] a mandatory duty to provide a system of 'last resort' subsistence medical care . . ."].) Again, we disagree. This provision, which is found in Health and Safety Code, division 107, part 2, chapter 2.5, article 1, entitled "Hospital Fair Pricing Policies," requires a hospital to offer extended payment plans to patients eligible for its discount payment and to "limit expected payment for services it provides to [such

---

[8] Nor do allegations that Brown was uninsured due to a mistake as to her coverage date preclude a duty under section 17000. The question is not why she incurred a bill for necessary medical care but, rather, whether she can afford such care.

[9] For the same reasons, we reject related arguments the County asserts for the first time on appeal, disputing Brown's contention that she is medically indigent because (1) she "does not need ongoing assistance with subsistence medical care [as] she has the funds to afford insurance, and has obtained private health insurance" and (2) the income she alleges is sufficient to allow her to pay off her medical bills. We observe, in any case, that "a county's obligation to provide subsistence medical care to the poor includes not only those with no ability to pay, but also those with a limited ability to pay, sometimes referred to as the 'working poor.' " (*Alford, supra,* 151 Cal.App.4th at p. 29.)

[10] The amended petition does not include an allegation that Brown's medical bills were reduced under Health and Safety Code section 127405, but she did not object below when the County asserted it as a basis for her bill reduction, and she cited it in explaining that she "accessed [the unfair debt collection laws] to reduce her hospital bill."

patients] to the amount of payment the hospital would expect, in good faith, to receive for providing services from Medicare, Medi-Cal, Healthy Families, or another government-sponsored health program of health benefits . . . ." (Health & Saf. Code, § 127405, subds. (b) & (d).) Thus, Brown's allegations do not show the hospital provided her coverage or support; at most, they show the hospital billed her at a discount rate. She still remains responsible for payment at the reduced, discounted amount and has not alleged that she received any assistance in this regard.[11]

### 3. The County's Challenge to Brown's Eligibility.

On appeal, the County conflates the issue below, i.e., whether Brown is a person to whom it owes a duty under section 17000, with her eligibility for residual coverage under the County's standards.[12] The County maintains it had discretion to deny coverage to Brown because she has "provided [the court] with enough information from which to make a determination that she does not qualify for benefits." We disagree with this contention. The crux of Brown's request for administrative mandamus is the County's refusal to reevaluate her under its residual coverage standards. As she correctly argued below, "It is the failure to evaluate [her] eligibility at all which invokes . . . the CCP 1094.5 writ . . . ." The County contends for the first time on appeal that it "has assessed [Brown's] situation in the context of her CMSP application." This "fact" is not alleged in the amended petition and does not appear in any document subject to judicial notice, and we do not consider it. We do not conclude, in any case, that Brown's allegations and the matters subject to judicial notice establish that she is ineligible for coverage as a matter of law, as the County failed to provide any analysis of the eligibility factors identified in its residual coverage standards. Although the County concludes in its summary of argument that it had discretion to deny Brown relief because she "has assets in excess of the small limit established by the County . . ." and later discusses its $2,000 limit on "net non-exempt" property in contending its standards are authorized by law, it does not discuss Brown's assets or demonstrate that they exceed its asset limit.[13]

---

[11] In light of our conclusion above, we need not decide Brown's contention that section 17000 applies unless an applicant is relieved in full by the assistance she receives.

[12] To the extent the County asserts arguments on appeal that it did not raise below, we consider them in determining whether the judgment is correct on any ground. (See *Davey v. Southern Pacific Co.* (1897) 116 Cal. 325, 329–330 [48 P. 117]; accord, *J.B. Aguerre, Inc. v. American Guarantee & Liability Ins. Co.* (1997) 59 Cal.App.4th 6, 15–16 [68 Cal.Rptr.2d 837].)

[13] To the extent the County relies on assets in Brown's retirement account, the matters subject to judicial notice do not establish as a matter of law that applicants may not spend down assets to qualify under the County's standards. The County's standards do not expressly allow or preclude a spend down of assets, but the CMSP Eligibility Manual property section, which they appear to incorporate, provides for a "countable property reserve" that is subject to

## C.   Brown's Second Cause of Action—Ordinary Mandamus

Brown seeks a writ of mandamus compelling the County to comply with its duty under section 17000 by offering residual coverage to indigent residents who are not eligible for CMSP benefits, but cannot afford health care. (See Code Civ. Proc., § 1085, subd. (a) [a petition for writ of mandate seeks "to compel the performance of an act which the law specially enjoins, as a duty resulting from an office, trust, or station . . ."].) She alleges that the County has not actually implemented its residual coverage standards to provide such coverage and that its "paper program" effectively denies medical care to indigent residents ineligible for CMSP without considering their ability to pay all or part of their medical care. (*Alford, supra,* 151 Cal.App.4th at p. 19.) In addition, Brown alleges that the County's residual coverage standards are incomplete because "[t]hey do not provide any process whatsoever to identify applicants or to notify them how to seek relief if they are excluded from CMSP. They do not provide any standards as to how the costs a person must bear will be determined. Further, they appear to exclude persons for reasons unauthorized by statute, such as [persons who fail] to contact the County within 10 days of service and whose resources are insufficient to meet their medical needs."

██   Brown has a beneficial interest in a writ directing the County to implement its standards as to her by reevaluating her claim and to adopt standards for determining an applicant's share of the cost. She does not have such an interest to the extent the writ would require the County to supplement its residual coverage standards to provide a process for identifying and notifying potential applicants and to remove a provision limiting the time for application in the absence of good cause, as neither of these provisions affects her. Nor does she have such an interest in requiring the County to provide coverage to other residents described in section 17000. We conclude, however, that the allegations in the amended petition are sufficient to invoke the "public right/public duty" exception to the beneficial interest requirement. Although a petitioner may ordinarily obtain a writ of mandate only if she is beneficially interested, an exception to the general rule applies when " ' "the question is one of public right and the object of the mandamus is to procure the enforcement of a public duty . . . ." ' " (*Green v. Obledo* (1981) 29 Cal.3d 126, 144 [172 Cal.Rptr. 206, 624 P.2d 256] (*Green*).) In such a case, the petitioner " ' "need not show that [she] has any legal or special interest in the result, since it is sufficient that [she] is interested as a citizen in having the laws executed and the duty in question enforced." ' " (*Ibid.*) Brown

a spend down provision (§ 7-030). Even if Brown's retirement assets are "countable," it is not clear whether the residual coverage standards incorporate the CMSP spend down provision. Resolution of this issue requires more than a representation in the County's briefing, and Brown seeks leave to amend, in any case, to challenge the validity of an asset limit that does not include a spend down provision.

alleges that she is a citizen seeking to enforce a public duty to provide "safety net health care to indigents" under section 17000. ██ We agree that the County's duty to provide medical care to all indigent residents described in section 17000 is a public duty that is generally subject to enforcement by a private citizen. (See *Union of American Physicians & Dentists v. County of Santa Clara* (1983) 149 Cal.App.3d 45, 53 [196 Cal.Rptr. 602] ["[I]f a county fails to perform its duty, the remedy is not to impose liability for individual claims [by medical providers for compensation], but to require it to fulfill its obligations to the indigent, who are the class of persons benefited under section 17000."]; *Green, supra,* 29 Cal.3d at p. 145 ["proper calculation of AFDC benefits is a matter of public right"].) ██ Moreover, "[t]he purpose of a standing requirement is to ensure that the courts will decide only actual controversies between parties with a sufficient interest in the subject matter of the dispute to press their case with vigor. [Citations.] This purpose is met when, as here, [Brown] possess[es] standing to have the underlying controversy adjudicated and the desired relief granted after a trial on the merits . . . ." (*Common Cause v. Board of Supervisors* (1989) 49 Cal.3d 432, 439–440 [261 Cal.Rptr. 574, 777 P.2d 610].)

██ The County asserts: "The propriety of a citizen's suit requires a judicial balancing of interests and the interest of a citizen may be considered sufficient only when the public duty is sharp and the public need weighty." (See *Waste Management, supra,* 79 Cal.App.4th at p. 1237, relying on *McDonald v. Stockton Met. Transit Dist.* (1973) 36 Cal.App.3d 436, 440 [111 Cal.Rptr. 637].) These decisions do not suggest that courts are reluctant to recognize a citizen's standing to enforce a public duty. Indeed, this exception "promotes the policy of guaranteeing citizens the opportunity to ensure that no governmental body impairs or defeats the purpose of legislation establishing a public right," and "has often been invoked by California courts." (*Green, supra,* 29 Cal.3d at p. 144.) It is true "the policy underlying the exception may be outweighed in a proper case by competing considerations of a more urgent nature . . ." (*id.* at p. 145), but the County has not identified any such considerations here. We conclude, in any event, that the public need at issue in this case is "weighty." The ability to obtain necessary medical care is a basic human need, and the public has a strong interest in the provision of such care to indigent persons to facilitate their continuing independence and prevent them from becoming dependents of the state. Failure to comply with a duty to provide such care implicates a significant public interest, and a citizen may compel its performance.

The County argues: "There is no weighty public interest" here, contending Brown "is asking the court to order [it] to do that which it is already willing to do without coercion," as it meets its obligations under section 17000 by participating in CMSP and providing medical care to "a very small number of residents who come within the meaning of section 17000 but who are 'not

entitled to medical benefits under any federal, state, or county medical services program . . . .' " This contention has no merit. Brown has alleged that the County has failed to meet its duty in a number of respects, and the allegations and matters subject to judicial notice do not compel a finding to the contrary. Additionally, the County's claim that a "very small number" of indigent residents require such coverage, to the extent it bears on the weight of the public need, is a question of fact not properly resolved at the demurrer stage. In disputing the existence of a sufficient public need, the County also maintains the amended petition "offer[s] no evidence that [the County] does not comply with its duty pursuant to section 17000," and that "[Brown's] case is not evidence that any eligible individual has been denied coverage." To survive demurrer, however, Brown is not required to provide the court with evidentiary proof that supports her allegations, and the County provides no authority requiring Brown to allege an injury to a specific individual, other than herself.[14]

### D. *The County Is Not Entitled to Judgment as a Matter of Law*

The County contends it "willingly" satisfied its duty under section 17000 by participating in CMSP and providing direct assistance to indigent persons ineligible for CMSP under legally sound residual coverage standards, apparently seeking a substantive determination that it has complied with section 17000 as a matter of law. To the extent the County's adoption of residual coverage standards in direct response to this litigation challenging its failure to do so may be deemed "willful," we conclude that such a determination is not possible at the demurrer stage in this case. Brown alleges that the County has failed to make residual coverage available to her and other indigent residents, and this is a question of fact that requires evidentiary proof at trial. She also alleges the County's standards are insufficient to satisfy section 17000. To the extent this contention presents a question of law that may be resolved without evidence, it was not litigated below, and we decline to decide it on appeal.

We conclude, accordingly, that the trial court erred in sustaining the County's demurrer. We note the unfairness of the result that the County advocates and the trial court reached below. When Brown first sought medical assistance under section 17000, the hearing officer acknowledged that the County did not offer residual coverage to indigent residents deemed ineligible for CMSP benefits. Prompted by Brown's petition to correct this

---

[14] The trial court appears to have concluded no weighty public need is at issue because Brown does not allege that she ever contacted her social worker regarding the County's decision, or that she requested and was denied review. To the extent such allegations bear upon the public duty exception, the record shows that Brown could amend her petition to assert them.

deficiency, the County adopted standards for residual coverage during this litigation, then sought dismissal of Brown's petition—even though it had not formally evaluated her eligibility under these standards, provided notice of action, allowed her to appeal its denial of residual coverage, or afforded her an opportunity for hearing. Indeed, the County contended she lacked standing even to seek such procedural protections, and the trial court dismissed her petition without considering the substance of her allegations or deciding the overarching question they raise: Has the County, in fact, satisfied its duty to Brown under section 17000? Although we express no opinion in this regard, confining our decision to the issues before us in their procedural context, we conclude that Brown is entitled, at a minimum, to a full and fair determination of this question.

In light of our conclusion in this regard, we need not decide whether Brown has demonstrated a reasonable possibility that she can cure her petition by amendment. (See *Schifando v. City of Los Angeles* (2003) 31 Cal.4th 1074, 1081 [6 Cal.Rptr.3d 457, 79 P.3d 569].)[15]

## DISPOSITION

The judgment is reversed, with costs to Brown. The matter is remanded to the superior court for further proceedings consistent with this opinion.

Margulies, J., and Dondero, J., concurred.

---

[15] Brown asserts a number of allegations in her appellate briefing that were not included in her amended petition. She also seeks leave to amend to allege that the County's rules permit spend down of assets, that her assets "put her just over the $2000 resource limit," and that she spent these assets on her basic needs. Although we note that she may seek leave to amend her petition on remand to assert these allegations, we express no opinion regarding the merits of such a request.