Filed 6/18/26  Allen v. State of Cal. CA5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| DAVID ALLEN,<br><br>Plaintiff and Appellant,<br><br>v.<br><br>STATE OF CALIFORNIA, et al.,<br><br>Defendants and Respondents. | F089260, F089988<br><br>(Super. Ct. No. 19CECG02841)<br><br>**OPINION** |

APPEALS from a judgment and order of the Superior Court of Fresno County. Daniel J. Brickey and Jeffrey Y. Hamilton, Jr., Judges.

David Allen, in pro. per., for Plaintiff and Appellant.

Rob Bonta, Attorney General, Cheryl L. Feiner, Assistant Attorney General, Gregory D. Brown, Maureen C. Onyeagbako, and Grant Lien, Deputy Attorneys General, for Defendants and Respondents.

-ooOoo-

Plaintiff David Allen appears to be a pre-adjudication civil detainee proceeding in pro per in this civil rights action filed pursuant to section 1983 of title 42 of the United States Code.  Allen challenges the California regulations that prohibit internet use and personal possession of certain electronic devices by certain detained individuals.  He

contends the regulations are unconstitutional and contends that the regulation prohibiting the possession of electronic devices was implemented without legal authority.

The trial court[1] sustained a demurrer to Allen's Fifth Amended Complaint without leave to amend. A different judge of the superior court[2] then ordered the case dismissed under Code of Civil Procedure section 583.310 because Allen did not bring the matter to trial within five years. The judge who sustained the demurrer then entered a judgment for the defendants upon the order sustaining the demurrer.

Allen filed two notices of appeal, one from the judgment and one from the unsigned minute order reflecting the dismissal of the case for failure to bring the matter to trial within five years. The notices of appeal were docketed under separate case numbers, but on October 17, 2025, the appeals were consolidated at Allen's request.

Allen contends the trial court erred in sustaining the demurrer as to all but one of his causes of action without leave to amend. We disagree. Under the governing substantive law, Allen's complaint fails to state cognizable causes of action and cannot be cured by amendment. We affirm the judgment on this basis and thus need not address Allen's claim that the dismissal under the five-year rule was erroneous.

## BACKGROUND

Based on the operative complaint, Allen appears to be a civil detainee at Coalinga State Hospital ("CSH") facing commitment as a sexually violent predator ("SVP") under California's Sexually Violent Predator Act ("SVPA"). (Welf. & Inst. Code, § 6600 et seq.) In 2003, the Department of State Hospitals ("DSH") enacted section 891 of title 9 of the California Code of Regulations (section 891). Section 891 states, "Non-LPS patients shall not have access to the internet."[3]

---

[1] Judge Jeffrey Y. Hamilton, Jr.

[2] Judge Daniel J. Brickey.

[3] " 'Non-LPS' means that the placement in or commitment to the facility is pursuant to legal authority other than the Lanterman-Petris-Short (LPS) Act, commencing

On October 26, 2009, the DSH enacted section 4350 of title 9 of the California Code of Regulations (section 4350). (*Williams v. Price* (E.D. Cal. July 29, 2020, No. 1:18–cv–00102–NONE–SAB (PC)) 2020 WL 4350089, at p. *1 (*Williams*).) At that time, as relevant here, section 4350 stated:

"Electronic devices with the capability to connect to a wired … and/or a wireless … communications network to send and/or receive information are prohibited, including devices without native capabilities that can be modified for network communication…. Some examples of the prohibited devices include desktop computers, laptop computers, cellular phones, electronic gaming devices, personal digital assistant (PDA), graphing calculators, and radios (satellite, shortwave, CB and GPS)." (*Williams*, at p. 1.)

On December 22, 2017, the DSH issued a Notice of Emergency Amendments and Findings of Emergency for section 4350. (*Williams, supra,* 2020 WL 4350089, at p. *1.) An additional notice was issued around January 10, 2018. In relevant part, the amended section 4350 states:

"(a) [P]atients are prohibited from having personal access to, possession, or on-site storage of the following items:

"(1) Electronic devices with the capability to connect to a wired … and/or a wireless … communications network to send and/or receive information including, but not limited to, the following:

"(A) Desktop computers; laptop computers, tablets, single-board computers or motherboards such as "Raspberry Pi;" cellular or satellite phones; personal digital assistant (PDA's); graphing calculators; and satellite, shortwave, CB and GPS radios.

"(B) Devices without native capabilities that can be modified for network communication. The modification may or may not be supported by the product vendor and may be a hardware and/or software configuration change.

---

with Section 5000, of Part 1, Division 5 of the Welfare and Institutions Code." (Cal. Code Regs. tit. 9, § 881(o).) The LPS Act "governs involuntary treatment of the mentally ill in California." (*Conservatorship of George H.* (2008) 169 Cal.App.4th 157, 159.)

"(2) Digital media recording devices, including but not limited to CD, DVD, Blu-Ray burners.

"(3) Voice or visual recording devices in any format.

"(4) Items capable of patient-accessible memory storage, including but not limited to:

"(A) Any device capable of accessible digital memory or remote memory access.

"(B) Recordable disks, including but not limited to CDs, DVDs, Blu-Ray, and CD-ROM.

"(C) Universal Serial Bus (USB) devices, also known as flash drives or thumb drives.

"(D) Hard drives, subscriber identity module (SIM) cards, secure digital (SD) drives or cards, micro-secure digital drives or cards (MicroSD), compact flash drives, secure digital high capacity (SDHC), secure digital extended capacity (SDXC), and other similar insertable memory devices.

"(E) Gaming devices with digital memory storage ability, the ability to access the Internet, or the ability to play games or other media or access date not specifically designed for the device[,] or only able to be played on that particular gaming device[,] as provided by an approved third-party vendor.

"(F) Floppy disks, hard disks, and vertical helical scan or video home system (VHS) cassettes.

"(b) Electronic items that do not conflict with subsection (a) that patients are permitted to possess or have personal access to include:

"(1) One (1) television or computer monitor; one (1) DVD, Blu-ray, or similar player; one (1) CD player; and one (1) radio or music player. These items shall not have Internet, external communication, or wireless communication capability.

"(2) No more than thirty (30) commercially manufactured and unmodified CDs, DVDs, and Blu-Rays received in factory-original packaging in a patient's room or unit storage. Patient may store additional manufactured and unmodified CSs, DVDs, and Blu-Rays in off-unit storage.

4.

"(3) Tablets or other devices designed for confined individuals through authorized vendors of the Department of State Hospitals and California Department of Corrections and Rehabilitation."

Patients were provided an "amnesty/grace period" from January 19, 2018, to January 28, 2018, to voluntarily relinquish their prohibited electronic devices.[4]  During this period, patients could place prohibited devices into "amnesty bins" for collection and destruction; patients would not be criminally charged for possessing the devices or for anything contained in the devices.  Patients could also turn in their prohibited devices during this period to be searched and mailed to a person of their choice.  Patients choosing to have their items mailed out would have to sign a consent for search form, and they would be criminally charged for illegal content on their devices.

Allen filed this action on August 5, 2019.  He filed the operative Fifth Amended Complaint on March 20, 2024, alleging his constitutional rights were violated by section 891 and the amended version of section 4350.  The defendants were the State of California, DSH, the current and former directors of DSH and executive directors of CSH, the DSH chief of police services, and five staff members at CSH.

Allen alleged that he possessed electronic devices that became contraband upon amended section 4350's implementation.  During the amnesty period, he presented noncompliant electronic devices to CSH staff on two days.  Both times he signed a form giving consent for his devices to be searched.  He alleged he was coerced into signing both waivers.  It is unclear if he requested his devices to be mailed to a person of his designation, if he elected for his devices to be destroyed, or if the devices were handled some other way.  He also does not say whether his devices were searched.

---

[4] One of the memorandums said the period began January 18 and the other said it began January 19.

He asserts that sections 891 and 4350 violate his First Amendment rights to free speech and expression as he is unable to use the internet to publicly express his opinion on issues of general concern, including political issues.

He asserts two claims under the Fourteenth Amendment. First, he claims section 4350's ban on wireless-capable devices creates unconstitutional conditions of confinement. He alleges that while section 4350 was amended to combat an increase in patient trading of child pornography, he has never been convicted of crimes against children or of crimes involving use of the internet. As for his second Fourteenth Amendment claim, he asserts that the defendants acted with "deliberate indifference."[5]

He asserts a cause of action under the Fourth Amendment, contending his rights were violated when he was forced to sign a consent waiver for the search of his devices. As for his last claim, he asserts the defendants lacked statutory authority to implement section 4350 against SVPs.

All his federal constitutional claims were brought under section 1983 of title 42 of the United States Code. He also cited the California Constitution's corollaries to the federal constitutional provisions as bases for his First and Fourth Amendment claims.

### The demurrer

Defendants demurrered to the Fifth Amended Complaint. They asserted none of Allen's constitutional claims, under either the state or federal constitution, are cognizable because "civil detainees do not have a right to a computer or electronic devices and their rooms are subject to random searches in the interests of institutional security." Defendants also asserted the federal constitutional claims were barred by qualified immunity. They also contended Allen's ultra vires claim was not cognizable because

---

[5] This second Fourteenth Amendment cause of action is incomprehensible; we cannot discern what Allen is trying to allege. In any event, he does not appeal the sustaining of the demurrer as to this cause of action.

6.

section 4350 was implemented under statutory authority that Allen ignores. Allen opposed the demurrer.

The trial court sustained the demurrer without leave to amend on October 24, 2024, finding (1) that Allen had not alleged facts to demonstrate constitutional violations, and (2) that the ultra vires claim was not cognizable because there was clear statutory authority for section 4350's implementation. The court also found that the federal constitutional claims were barred by qualified immunity.

### *The five-year dismissal*

On November 19, 2024, Judge Brickey held a case management conference, at which the parties did not appear. Judge Brickey issued an order sua sponte dismissing the case under Code of Civil Procedure section 583.310 without prejudice because Allen failed to bring the case to trial within five years. The order was recorded in an unsigned minute order. The judge was apparently unaware that Judge Hamilton previously had sustained the demurrer to the Fifth Amended Complaint without leave to amend and ordered defendants to submit a proposed judgment of dismissal.

On December 16, 2024, Judge Hamilton entered judgment in favor of defendants, specifically referencing the order sustaining the demurrer without leave to amend.

### *Notices of appeal*

On January 21, 2025, Allen filed a notice of appeal, stating he was appealing from the unsigned minute order dismissing the case for failing to bring it to trial in five years. This appeal was docketed under case no. F089260.

On June 12, 2025, he filed another notice of appeal, this one appealing from the judgment. This appeal was docketed under case no. F089929.

On October 17, 2025, we ordered the appeals consolidated under case no. F089260.

7.

**DISCUSSION**

Allen contends the trial court erred in sustaining the demurrer to all but one of his causes of action without leave to amend; he does not challenge the trial court's ruling as to his Fourteenth Amendment "deliberate indifference" claim. He also challenges the court's order dismissing his case for failing to bring it to trial in five years. We conclude the trial court did not err in sustaining the demurrer without leave to amend, and we therefore need not address Allen's claim regarding the five-year dismissal.

**I.      Basic law and standard of review**

A demurrer tests the legal sufficiency of the challenged pleading. (*Blank v. Kirwan* (1985) 39 Cal.3d 311, 318; *Milligan v. Golden Gate Bridge Highway & Transportation Dist.* (2004) 120 Cal.App.4th 1, 5.) The judgment of dismissal after a sustained demurrer must be affirmed if the challenged pleading fails to plead an essential element or if the allegations disclose some defense or bar to recovery. (*Brown v. Crandall* (2011) 198 Cal.App.4th 1, 8.) We are to affirm if any of the grounds for demurrer raised by respondent is well taken and disposes of the causes of action of the complaint pending before us. (*Aubry v. Tri-City Hospital Dist.* (1992) 2 Cal.4th 962, 967.)

We accept as true all material facts properly pleaded in the complaint, but do not assume the truth of contentions, deductions, or conclusions of fact and law. (*Estate of Holdaway* (2019) 40 Cal.App.5th 1049, 1052; *Dudek v. Dudek* (2019) 34 Cal.App.5th 154, 163.) "We give the complaint a reasonable interpretation and treat the demurrer as admitting all material facts properly pleaded that are not inconsistent with other allegations, exhibits, or judicially noticed facts." (*Morris v. JPMorgan Chase Bank, N.A.* (2022) 78 Cal.App.5th 279, 292.)

"Sustaining a demurrer without leave to amend is proper ' "where the facts are not in dispute, and the nature of the plaintiff's claim is clear, but, under the substantive law,

no liability exists." ' " (*Regents of University of California v. Superior Court* (2024) 102 Cal.App.5th 852, 864.)

## II. First Amendment claim

Allen argues he has pleaded a cognizable claim that his freedom of expression under the First Amendment and article 1, section 2(a) of the California Constitution is violated by his denial of access to the internet. Since his analysis discusses only First Amendment precedent, we will analyze his claim under First Amendment principles only. We reject his argument for the reasons stated below.

The First Amendment states, in relevant part, "Congress shall make no law … abridging the freedom of speech." (U.S. Const., 1st Amend.) The Supreme Court has recognized that " 'convicted prisoners do not forfeit all constitutional protections by reason of their conviction and confinement.' " (*O'Lone v. Estate of Shabazz* (1987) 482 U.S. 342, 348.) Although prisoners retain First Amendment rights while incarcerated, the exercise of such rights is limited by the fact of confinement and the "legitimate goals and policies of the penal institution[.]" (*Bell v. Wolfish* (1979) 441 U.S. 520, 545–546 (*Bell*).) Challenges to prison restrictions that are asserted to inhibit First Amendment interests must be analyzed in terms of those legitimate policies and goals of the institution. (*Pell v. Procunier* (1974) 417 U.S. 817, 822.) Similarly, "civilly committed persons retain those First Amendment rights not inherently inconsistent with the circumstances of their detention." (*Hydrick v. Hunter* (9th Cir. 2007) 500 F.3d 978, 991.)

Here, Allen is prohibited from accessing the internet or owning certain electronic devices. We are unaware of any court that has found that an SVP has a First Amendment right to possess and use electronic devices or access the internet. (*Johanneck v. Ahlin* (E.D. Cal. Feb. 21, 2018, No. 1:18–cv–00051–LJO–MJS (PC)) 2018 WL 1014454, at pp. *12–13; *Telucci v. Withrow* (E.D. Cal. May 19, 2016, No. 1:16–cv–00025–JLT (PC)) 2016 WL 2930629, at p. *5 [finding no First Amendment right to the internet for civil

9.

detainees; *Carmony v. Cty. of Sacramento* (E.D. Cal. Feb. 13, 2008, No. CIV S–05–1679 LKK GGH P) 2008 WL 435343, at p. *18 [finding civil detainee had no "free-standing First Amendment right to access computers and/or the internet."].)

Even if Allen had a First Amendment right to the electronic devices prohibited by section 4350 and the internet, there is a reasonable connection between the prohibition of those things and a legitimate government interest in ensuring the security of the public and the facility. (*Allen v. King* (9th Cir. 2018) 741 F.App'x 463, 464 [holding that CSH had legitimate interest in preventing illicit activity, such as accepting or sharing child pornography and that "Section 4350's ban on patients' personal possession of wireless-capable electronic devices is reasonably related to [the] legitimate interest in preventing patients from using such devices for illicit purposes."].) In promulgating amendments to section 4350 and restricting internet access and certain electronic devices, DSH has asserted that the regulations are necessary for reasons beyond stemming the flow of child pornography into and out of CSH. DSH stated that internet access provides "aerial views of DSH facilities, communication with victims, [and] communication to create additional victims[.]" This "creates danger for the public, the staff, and patients[.]" (CSH Notice of Emergency Amendments and Finding of Emergency for 9 CCR 4350, Jan. 10, 2018.)

Allen fails to state a cognizable First Amendment claim, and under governing law he cannot amend his complaint to state a viable claim. Accordingly, sustaining the demurrer without leave to amend is warranted.

### III.   Fourteenth Amendment claim

Allen also alleges that section 4350's ban on patient possession of devices capable of connecting to the internet is punitive in violation of the Fourteenth Amendment.

Civilly committed persons have a substantive due process right under the Fourteenth Amendment to be free from restrictions that amount to punishment. (*United States v. Salerno* (1987) 481 U.S. 739, 746–747.) "There is no constitutional infringement, however, if restrictions are 'but an incident of some other legitimate

10.

government purpose.' " (*Valdez v. Rosenbaum* (9th Cir. 2002) 302 F.3d 1039, 1045.) For restrictions to be permissible, they must (1) have a legitimate, non-punitive purpose and (2) not appear excessive in relation to that purpose. (*Bell, supra*, 441 U.S. at pp. 538–539.) Restrictions imposed on SVPs need not be the least intrusive or those that the court agrees with as long as they advance a legitimate interest in the hospital. (*Valdez*, at p. 1046; citing *Bell*, at pp. 547-548 ["Such considerations are peculiarly within the province and professional expertise of corrections officials" as long as the determinations are not an exaggerated response to the considerations.].)

Documents contained in Allen's request for judicial notice in support of his opposition to the demurrer to his fifth amended complaint establish that some CSH SVPs have used personally possessed electronic devices to access and share child pornography or engage in other illicit activities such as contraband trafficking. As we just explained, CSH has a legitimate interest in preventing such illicit activity. Section 4350's ban on personal possession of the prohibited devices is reasonably related to CSH's legitimate interest in curbing the institutional problem of patients using such devices to access and share child pornography and engage in other illegal activities.

Even if Allen had never committed any offenses involving children or the internet, and thus there was no reason to individually deny him access to the internet or internet-capable devices, the facts as presented in documents he submitted in support of his opposition to the demurrer reflect that patient access to these things has allowed for the re-victimization of children due to illegal sharing of pornography, plus the trafficking of other contraband. Allen presents no facts to suggest that non-abusive inmates can be provided access to the internet or internet-capable devices without interfering with the overall security of the facility.

Under governing law, Allen cannot state a cognizable Fourteenth Amendment substantive due process claim, and thus the trial court correctly sustained the demurrer as to this claim without leave to amend.

11.

## IV. Fourth Amendment claim

Allen alleges his rights under the Fourth Amendment and article 1, section 13 of the California Constitution were violated by his being forced to consent to a search of his prohibited electronic devices. His argument proceeds under Fourth Amendment principles only, so we limit our analysis to those principles.

The Fourth Amendment provides that "the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated[.]" (U.S. Const. 4th Amend.) "Warrantless searches 'are *per se* unreasonable under the Fourth Amendment—subject only to a few specifically established and well-delineated exceptions.' " (*People v. Lopez* (2019) 8 Cal.5th 353, 359.) The warrant requirement generally applies to searches of electronic devices. (*People v. Patton* (2019) 41 Cal.App.5th 934, 946.)

One exception to the warrant requirement for conducting a search of a person or their property is the person's consent to the search. (*People v. Alvarez* (2023) 98 Cal.App.5th 531, 546.) "To establish this exception, the state must prove that the consent was freely and voluntarily given." (*Ibid.*)

Allen's Fourth Amendment claim is not cognizable on the facts alleged. As we have explained, section 4350 is not unconstitutional. This section made his wireless-capable devices contraband, and he has no right to possess contraband within the institution. (Welf. & Inst. Code, § 7295.) According to the complaint, CSH gave Allen two options: he could surrender the device for destruction without any review of its contents, or he could elect to have the device mailed to a person outside the facility upon consenting to a search of its contents. Allen alleges he consented to the search. But because the complaint also alleges that he could have chosen destruction without a search, the pleaded facts do not establish that his consent was coerced or that the hospital compelled a search. The complaint therefore fails to state a Fourth Amendment

violation. Because the nature of the challenged amnesty provision of section 4350 forecloses any viable coercion theory on these facts, leave to amend was properly denied.

## V. Ultra vires claim

DSH cited Welfare and Institutions Code sections 4005.1 and 4027 as their statutory authority for promulgating section 4350. Allen alleges that the "State of California" and DSH exceeded the scope of their legal authority under Welfare and Institutions Code section 4027 in promulgating section 4350.

Welfare and Institutions Code section 4027 provides that DSH "may adopt regulations concerning patients' rights and related procedures applicable to the inpatient treatment of … mentally disordered sex offenders[.]" Allen argues this statute does not give the defendants the power to enact section 4350 against SVPs and pretrial SVPs because such patients are not "mentally disordered sex offenders."

However, Allen does not address Welfare and Institutions Code section 4005.1. That section states that DSH "may adopt and enforce rules and regulations necessary to carry out [its] duties under this division." (Welf. & Inst. Code, § 4005.1.) The division to which that section refers is Division 4—Mental Health. (*Ibid.*) Under Division 4, DSH is granted broad authority to promulgate regulations related to the care, custody, and treatment of persons with mental health disorders in its custody (Welf. & Inst. Code, § 4011) and who are housed at state hospitals such as CSH (Welf. & Inst. Code, § 4100). Thus, Welfare and Institutions Code section 4005.1 gives DSH the authority to enact section 4350 regarding patients in his classification.

Allen's ultra vires claim thus fails, and leave to amend cannot cure this defect.

13.

**DISPOSITION**

The judgment is affirmed. Allen's requests for judicial notice are denied.[6] The parties shall bear their owns costs on appeal.

SNAUFFER, J.

WE CONCUR:


LEVY, Acting P. J.


DETJEN, J.

---

[6] Allen filed requests for judicial notice on November 26, 2025, and February 20, 2026. He requested that we judicially notice his proposed sixth amended complaint, which he did not submit for filing in the superior court, as well as various California cases, statutes, and regulations. We deny Allen's request to judicially notice his proposed sixth amended complaint because he has not identified any basis for judicially noticing this document. (See Evid. Code, § 452.) We deny his request to judicially notice the various legal provisions because the request is unnecessary. (Evid. Code, § 451, subd. (a).)