Filed 4/30/14  Thompson v. Walgreen CA1/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION ONE

|  |  |
|---|---|
| SHIRLEY THOMPSON, <br><br>      Plaintiff and Appellant, <br><br> v. <br><br> WALGREEN CO., <br><br>      Defendant and Respondent. | A136797 <br><br> (Contra Costa County <br> Super. Ct. No. C10-03709) |

Plaintiff Shirley Thompson filled a prescription at a Walgreen drug store in December 2008 and was given the wrong medication.  On December 31, 2008, she was in a car accident, allegedly because she blacked out from side effects of the drug, and was injured.  She further alleged she became addicted to the drug and suffered physical and emotional distress as she gradually weaned herself off of it.  Her original complaint, filed two years later, asserted two causes of action.  By the time she filed her second amended complaint, the operative complaint here, her claims had been expanded to 10 causes of action, including several based on negligence, as well as battery, violations of regulatory statutes, unfair business practices, and negligent and intentional infliction of emotional distress.  She named as defendants both Walgreen Co. (Walgreen) and multiple Doe defendants, who she claimed played some role in filling the prescription.

The court sustained a demurrer to the second amended complaint, dismissed it with prejudice, and entered judgment for Walgreen.  The primary reason for sustaining the demurrer was that the negligence causes of action were barred by the statute of

1

limitations applicable to health care providers (Code Civ. Proc.,[1] § 340.5) because the original complaint was not filed until more than a year after the alleged injury. On appeal, Thompson contends the court erred when it sustained the demurrer, denied her leave to amend, dismissed the second amended complaint in its entirety, and entered judgment for Walgreen.

We uphold the trial court's ruling on the demurrer based on the statute of limitations on the fourth through seventh and tenth causes of action, failure to plead an intentional harmful or offensive touching on the first cause of action, waiver of the issue whether a private right of action even exists on the second and third causes of action, lack of standing on the eighth cause of action, and failure to plead facts showing "extreme and outrageous" conduct with respect to the ninth cause of action. We, therefore, affirm the judgment.

## FACTUAL BACKGROUND

Except as otherwise indicated, the facts underlying plaintiff's action are derived from the second amended complaint and in this procedural posture are accepted as true:[2]

In December 2008, plaintiff went to a Walgreen drug store in Pinole to have a prescription filled, apparently for Clonidine, a medication prescribed for hypertension.[3] (Physicians' Desk Reference (67th ed. 2013) p. 115.) Her second amended complaint alleged that "John Doe, a pharmacy technician or other type of employee of [Walgreen]

---

[1] Undesignated statutory references are to the Code of Civil Procedure.

[2] *Fox v. Ethicon Endo-Surgery, Inc.* (2005) 35 Cal.4th 797, 810 (*Fox*).

[3] The prescribed medication was identified in both amended complaints simply as "Drug A," and the mistakenly provided medication was called "Drug B." Plaintiff has provided the actual names of the drugs in her opening brief, and we include them here for added background clarity. We decline, however, to take judicial notice of the Wikipedia entry for Clonazepam and its side effects, as plaintiff requests, both because we find Wikipedia an inappropriate source of which to take judicial notice (Evid. Code, §§ 451, 452), and because plaintiff did not comply with the required procedures. (Evid. Code, § 459; Cal. Rules of Court, rule 8.252.) (All further references to rules will be to the California Rules of Court.) However, as noted in the text, we have consulted the Physicians' Desk Reference with respect to the general purpose of these drugs.

2

under the supervision of Pharmacist Doe 1 and [Walgreen], filled the prescription with the wrong drug, and instead gave Plaintiff a highly dangerous and addictive narcotic . . . ." The drug was referred to in the second amended complaint as "Drug B." Thompson tells us in her appellate brief the wrongly provided medication was Clonazepam, which is normally prescribed for panic attacks and seizures. (Physicians' Desk Reference, *supra,* at p. 115.)

It is not entirely clear from Thompson's pleading whether the prescription bottle was labeled "Clonidine" or "Clonazepam." That she alleged defendants had mislabeled the bottle would suggest it was labeled "Clonidine," but actually contained Clonazepam. At the hearing on the demurrer, however, plaintiff's counsel suggested the bottle was labeled "Clonazepam": "[T]his isn't a situation where they called it X and it was something else. This is a situation where she was supposed to get X, that was what her prescription was for, and they gave her Y, and this was labeled Y, but they're close enough in names that they made a mistake. [¶] THE COURT: Oh, okay. So you've got the prescription form and the bottle, and they don't match. [¶] [PLAINTIFF'S COUNSEL]: Right, they don't match. That's what this is about."

On December 31, 2008, plaintiff was in a car accident, apparently having blacked out and collided with a freeway divider, which left her with severe injuries. She blamed her injuries on the side effects of the Clonazepam.[4] Plaintiff further alleged, both in her original complaint and amended complaints, that she became addicted to Clonazepam ("Drug B") and suffered mental and physical distress as she slowly weaned herself off of it. (See fns. 3 & 4, *ante*.)

On December 30, 2010, plaintiff filed her original complaint containing two causes of action for negligence and an unspecified intentional tort. The first amended complaint contained nine causes of action and was very similar to the second amended complaint, which alleged the following 10 causes of action:

---

[4] Clonazepam is a controlled substance and is classified as a depressant in Health and Safety Code section 11057, subdivision (d)(7). (See also Health & Saf. Code, § 11375.)

1. Battery
2. Violation of Health and Safety Code sections 111440 and 111445 (mislabeling)
3. Violation of Business and Professions Code sections 4059, subdivision (a) and 4078, subdivision (a) (providing a dangerous drug and selling a mislabeled drug)
4. General negligence/professional negligence
5. Medical negligence
6. Negligent supervision and/or liability of employer for acts of employee
7. Negligent maintenance, control and operation of premises
8. Unfair business practices (Bus. & Prof. Code, § 17200 et seq.)
9. Intentional infliction of emotional distress
10. Negligent infliction of emotional distress

In all three complaints Thompson claimed damages in excess of $2,000,000.

After two demurrers and two amendments, defendant Walgreen successfully demurred for a third time to the second amended complaint, and plaintiff was not granted leave to amend. The second amended complaint was dismissed with prejudice and judgment was entered for Walgreen.

**DISCUSSION**

Thompson's first argument is that the statute of limitations under section 340.5 does not apply to any of the causes of action because Walgreen is not a "health care provider." But even if section 340.5 applies, Thompson claims her complaint was timely under the discovery rule because, due to delayed discovery of her injury, the causes of action did not accrue until a time within one year before the complaint was filed. In a similar vein, she claims the statute of limitations was tolled.

Thompson further argues that even if the professional negligence causes of action were subject to demurrer based on the statute of limitations, several causes of action were not negligence based, were properly pleaded, and were not subject to demurrer. Therefore, she claims the court erred in dismissing the entire action.

4

Plaintiff also claims the court erred in denying her leave to amend her complaint for a third time, saying she could have cured the defects if given one more chance to amend. Finally, she contends the second amended complaint should not have been dismissed against the Doe defendants.[5]

The parties agree on the appropriate standards of review. On the sufficiency of the pleading we apply a de novo standard of review. (*McClain v. Octagon Plaza, LLC* (2008) 159 Cal.App.4th 784, 791; *Cantu v. Resolution Trust Corp.* (1992) 4 Cal.App.4th 857, 879 (*Cantu*).) We review the denial of leave to amend only for abuse of discretion. (*San Mateo Union High School Dist. v. County of San Mateo* (2013) 213 Cal.App.4th 418, 441 (*San Mateo Union High School Dist.*); *Cantu, supra*, at pp. 889–890.)

### *Statute of Limitations: Fourth Through Seventh and Tenth Causes of Action*

Central to the parties' dispute is section 340.5, which establishes a limitations period for professional negligence of health care providers: "In an action for injury or death against a health care provider based upon such person's alleged professional negligence, the time for the commencement of action shall be three years after the date of injury or one year after the plaintiff discovers, or through the use of reasonable diligence should have discovered, the injury, whichever occurs first. In no event shall the time for commencement of legal action exceed three years unless tolled for any of the following: (1) upon proof of fraud, (2) intentional concealment, or (3) the presence of a foreign body, which has no therapeutic or diagnostic purpose or effect, in the person of the injured person. . . ."

### Walgreen is a Health Care Provider

A "health care provider" is defined in section 340.5: " 'Health care provider' means any person licensed or certified pursuant to Division 2 (commencing with Section 500) of the Business and Professions Code, or licensed pursuant to the Osteopathic

---

[5] Plaintiff also makes certain references in her opening brief to having received unfair treatment from the trial court. She did not follow up on these allegations with an argument on the merits. No heading of her brief raises this issue, therefore, we do not consider it. (Rule 8.204(a)(1)(B).)

Initiative Act, or the Chiropractic Initiative Act, or licensed pursuant to Chapter 2.5 (commencing with Section 1440) of Division 2 of the Health and Safety Code; and any clinic, health dispensary, or health facility, licensed pursuant to Division 2 (commencing with Section 1200) of the Health and Safety Code. . . ." (§ 340.5, subd. (1).)

On this point, plaintiff's argument clearly fails. Pharmacists and pharmacies, such as Walgreen, are licensed under division 2 of the Business and Professions Code and, therefore, fall within the scope of the statutory definition of health care provider. (Bus. & Prof. Code, §§ 4000–4125.) We reject plaintiff's argument that Walgreen is not a health care provider. The Doe defendants, too, appear to have been health care providers. (See "Dismissal of Action Against Doe Defendants," *post*.)

**Delayed Discovery**

Next, plaintiff contends that, due to delayed discovery of her injury, all causes of action were timely asserted, even assuming the applicability of section 340.5. Of course, the original complaint was filed within three years of the injury, in compliance with one of the limitations periods set forth in section 340.5. The question, however, is whether it was filed within one year of discovery, since the shorter of the two periods described in the statute is the one that controls. (§ 340.5.)

Thompson notes "the term 'injury,' as used in determining the date of accrual of a cause of action, 'means both "a person's physical condition *and* its 'negligent cause.' " ' " (*Fox, supra*, 35 Cal.4th at p. 808, fn. 2.) As she points out, the statute of limitations does not begin to run "until the injured person knows or by the exercise of reasonable diligence should have discovered the cause of such injury." (*Frederick v. Calbio Pharmaceuticals* (1979) 89 Cal.App.3d 49, 59.)

Plaintiff alleged she did not find out the cause of her injury until "over a year after she was injured." But she must have known something was wrong much earlier because she "blacked out" before the accident. We have no reason to believe an investigation immediately after the accident, which evidently involved no other cars, would not have led to discovery of Walgreen's—or someone's—negligence within the one-year limitations period. That the prescription bottle was labeled "Clonazepam"—which

6

seemingly was admitted by plaintiff's attorney at the hearing on the demurrer—should have put her on notice that something was wrong even before the accident. The label itself should have made the negligent filling of the prescription relatively easy and quick to ascertain. Nothing was alleged in the second amended complaint to suggest Thompson was impeded in her investigation, except that she was mentally "out of it" following the accident. We shall address that allegation below.

*Fox, supra*, 35 Cal.4th at page 803, held that "under the delayed discovery rule, a cause of action accrues and the statute of limitations begins to run when the plaintiff has reason to suspect an injury and some wrongful cause, unless the plaintiff pleads and proves that a reasonable investigation at that time would not have revealed a factual basis for that particular cause of action." It also held that "plaintiffs are required to conduct a reasonable investigation after becoming aware of an injury, and are charged with knowledge of the information that would have been revealed by such an investigation." (*Id*. at p. 808; see also *Norgart v. Upjohn Co.* (1999) 21 Cal.4th 383, 397–398.) "Once the plaintiff has a suspicion of wrongdoing, and therefore an incentive to sue, she must decide whether to file suit or sit on her rights. So long as a suspicion exists, it is clear that the plaintiff must go find the facts; she cannot wait for the facts to find her." (*Jolly v. Eli Lilly & Co.* (1988) 44 Cal.3d 1103, 1111.)

It is not enough to claim on appeal there was delayed discovery of the injury. Thompson was also required to include proper allegations of delayed discovery in her complaint. "In order to rely on the discovery rule for delayed accrual of a cause of action, '[a] plaintiff whose complaint shows on its face that his [or her] claim would be barred without the benefit of the discovery rule must specifically plead facts to show (1) the time and manner of discovery *and* (2) the inability to have made earlier discovery despite reasonable diligence.' " (*Fox, supra*, 35 Cal.4th at p. 808.) In assessing the sufficiency of the allegations of delayed discovery, the burden is on the plaintiff to " 'show diligence' "; " 'conclusory allegations will not withstand demurrer.' " (*Ibid*.)

Thompson neither pleaded facts showing the time and manner of discovery, nor the inability to have earlier discovered pertinent facts despite the exercise of reasonable

7

diligence. She pleaded in her second amended complaint that she "did not discover the true negligent acts of Defendants until over a year after she was injured." She further alleged she had become "addicted" to Clonazepam and was "mentally ill" for much of 2009 and 2010. Ultimately, she alleged, she "did not discover the negligent/wrongful acts of Defendants until sometime after December 2009, upon hiring Plaintiff's counsel and upon reasonable inquiry and investigation."

These allegations—which never included facts showing *why* she *could not* have discovered the negligent cause of her injury sooner—were insufficient to overcome the statute of limitations defense asserted by Walgreen. Indeed, during the hearing on the demurrer, the trial court pressed Thompson's attorney to explain the delayed discovery: "What did she learn within the one year [before filing her complaint] that she didn't know the day before the one year? [A]nd how did she learn it?" Counsel eventually told the court Thompson learned of the mistaken prescription when she took the prescription bottles to her doctors and "the doctors discovered that she had the wrong medication." When asked for a date when that occurred, plaintiff's counsel admitted it was "sometime in that later 2009 time frame."

If plaintiff wanted to take advantage of the delayed discovery rule, her complaint would have been timely only if the accident's negligent cause were discovered within one year of the actual filing date, that is, after December 30, 2009. We find plaintiff's pleading insufficient to meet the requirement that she plead facts to show she could not have learned there was a negligent cause of her injury in the auto accident or could not have learned of her addiction and its cause until after December 30, 2009. Counsel's in-court explanation that plaintiff learned of the prescription error "sometime" in "later 2009" actually defeated her claim of timely filing because the discovery date was not within a year of her actual filing date. Indeed, her attorney's answers in court suggest she could not truthfully amend the complaint to bring herself within the statute of limitations. We, therefore, uphold the court's ruling that the statute of limitations barred the causes of action based on professional negligence.

**Tolling**

Next plaintiff argues the statute of limitations was tolled. She cites two grounds: First, she was mentally "out of it." Second, she claims because Walgreen is an Illinois corporation, the statute of limitations was tolled under section 351, which tolls a limitations period when the defendant is "out of the state."

We need not tarry long over the latter argument. A foreign corporation doing business in California and subject to substituted service of process through the Secretary of State is not "out of the state" for tolling purposes. (Corp. Code, § 2111, subd. (a); *Dew v. Appleberry* (1979) 23 Cal.3d 630, 635, fn. 8; *Cardoso v. American Medical Systems, Inc.* (1986) 183 Cal.App.3d 994, 998–999; *Loope v. Greyhound Lines, Inc.* (1952) 114 Cal.App.2d 611, 614.)

We also reject plaintiff's claim that she was too "out of it" mentally to file a timely complaint. Section 352, subdivision (a), provides that a statute of limitations does not run against an insane person: "If a person entitled to bring an action, mentioned in Chapter 3 (commencing with Section 335) is, at the time the cause of action accrued either under the age of majority or insane, the time of the disability is not part of the time limited for the commencement of the action." Incompetency arising after the accrual of a cause of action does not suspend the running of the statute of limitations.[6] (*Larsson v. Cedars of Lebanon Hospital* (1950) 97 Cal.App.2d 704, 707.)

But for plaintiff to say she was "out of it" or "mentally ill" is not the same as alleging she was "insane" within the meaning of section 352. We find it telling that in the original complaint she alleged only that she was "in a severe state of disorientation

---

[6] Thompson alleged in her second amended complaint that she was "mentally ill" "[f]or a substantial period of time throughout 2009 and 2010." She also stated at the hearing on the demurrer that "[h]er being out of it occurred in 2009." Yet, she also alleged that her primary injury—blacking out and having an auto accident—occurred on December 31, 2008. Thus, even accepting her allegations as true, her cause of action accrued before she became "mentally ill," and the running of the statute of limitations was not tolled.

9

for many months." Now she attempts to recast such "disorientation" as "mental incapacitation" and to equate it with insanity.

The term "insane" has been defined as a condition of mental derangement which renders the sufferer incapable of caring for his or her property or transacting business or understanding the nature or effects of his or her acts. (*Hsu v. Mt. Zion Hospital* (1968) 259 Cal.App.2d 562, 571.) This definition may include a person who has been adjudicated mentally ill in a commitment proceeding under the Welfare and Institutions Code, but even such adjudication is not a conclusive judicial determination that he or she is insane for tolling purposes. (*Id.* at pp. 571–572.) Plaintiff alleged no medical diagnosis with a mental illness; her counsel admitted at the hearing on the demurrer that she had not been judicially determined to be incapacitated, nor had a conservator been appointed for her. Thompson's allegations fell far short of providing an adequate basis for tolling.

**Attorney Error**

Finally, plaintiff's counsel admitted in the trial court and before this court that she was unaware that the one-year statute of limitations of section 340.5 might apply in these circumstances. This appears to be a more candid explanation for the late filing of the complaint and one for which no tolling provision applies.

Plaintiff makes reference in her opening brief to possibly seeking relief under section 473, subdivision (b). Besides facing jurisdictional hurdles (*Shaw v. Hughes Aircraft Co.* (2000) 83 Cal.App.4th 1336, 1344 [trial court lost jurisdiction "over matters embraced in the judgment when the appeal was perfected"]; *Betz v. Pankow* (1993) 16 Cal.App.4th 931, 938 [appeal precludes trial court from vacating the appealed judgment or order]), that section cannot be invoked to obtain relief where the attorney's error consisted of failing to file a complaint within the statutory time limit. (*Castro v. Sacramento County Fire Protection Dist.* (1996) 47 Cal.App.4th 927, 928–929.)

**The Causes of Action Affected**

Having concluded that the statute of limitations barred at least some of the causes of action in the second amended complaint, we must determine which ones were properly

subject to demurrer on that basis. On appeal from a ruling sustaining a demurrer, we review the trial court's ruling, not its rationale. (*Haro v. City of Solana Beach* (2011) 195 Cal.App.4th 542, 549; *Walgreen Co. v. City and County of San Francisco* (2010) 185 Cal.App.4th 424, 433.)

The trial court applied section 340.5 to the second through seventh and tenth causes of action because they "clearly sound in negligence": "[P]utting the wrong medicine in an otherwise labeled container, if it causes injury, is an action for negligence." The court sustained the demurrer as to those causes of action because they were barred by the one-year statute of limitations under section 340.5.

In determining which statute of limitations applies to a given cause of action, we examine the nature of the right sued upon and not the form of the action or the relief demanded. What is significant for limitation purposes is the primary interest invaded by defendant's wrongful conduct. (*Hydro-Mill Co., Inc. v. Hayward, Tilton & Rolapp Ins. Associates, Inc.* (2004) 115 Cal.App.4th 1145, 1153; *Marin Healthcare Dist. v. Sutter Health* (2002) 103 Cal.App.4th 861, 875–876.) In the present case, defendants' wrongdoing threatened plaintiff's interest in maintaining bodily safety with respect to health care decision making.

With respect to the fourth and fifth causes of action, we see nothing controversial in applying section 340.5. Those two causes of action were denominated, respectively, "general negligence/professional negligence" and "medical negligence." It was alleged that because of such negligence, plaintiff blacked out, was in a car accident, and was injured. She eventually became addicted to the drug Clonazepam. Such allegations of personal injury due to professional negligence fall squarely within the coverage of section 340.5.[7]

---

[7] " 'Professional negligence' means a negligent act or omission to act by a health care provider in the rendering of professional services, which act or omission is the proximate cause of a personal injury or wrongful death, provided that such services are within the scope of services for which the provider is licensed and which are not within any restriction imposed by the licensing agency or licensed hospital." (§ 340.5, subd. (2).)

Causes of action six, seven and ten are also negligence based (negligent supervision, negligent maintenance, control and operation of premises, and negligent infliction of emotional distress, respectively). All of these causes of action related to the alleged negligence of Walgreen and the Doe defendants in allowing the wrong drug to be provided to plaintiff. The same injuries and damages were alleged with respect to the professional negligence and medical negligence claims. Because the gravamen of these causes of action was the same as the professional negligence cause of action, we find they are also barred by section 340.5.

The court below also applied the one-year statute of limitations to the second and third causes of action, which alleged defendants furnished a dangerous drug and mislabeled the drug dispensed by Walgreen in violation of certain regulatory statutes. We decline to base our decision on statute of limitation grounds with respect to those causes of action because, as discussed below, we are not convinced there is a private right of action under those statutes, and plaintiff has waived any claim that there is a valid cause of action by failing to brief the issue.

### Intentional Torts: First and Ninth Causes of Action

The trial court identified causes of action one, eight and nine as "intentional torts" and acknowledged "it can be urged" that such claims "are not subject to section 340.5, [but] those claims each fail to state a cause of action in that they fail to establish any element of intent or facts from which it can be inferred." We find two of those causes of action were, in fact, intentional torts that fail to survive a demurrer.

The first cause of action was for battery. The essential elements of battery are: 1. defendant touched plaintiff or caused plaintiff to be touched with the intent to harm or offend her; 2. plaintiff did not consent to the touching; 3. plaintiff was harmed or offended by defendant's conduct; and (if offensive, rather than harmful, touching is involved) and 4. a reasonable person in plaintiff's situation would have been offended by the touching. (Judicial Council of California Civil Jury Instructions (2014) CACI No. 1300, p. 836; *So v. Shin* (2013) 212 Cal.App.4th 652, 659.) The statute of limitations for

12

battery is ordinarily two years. (§ 335.1; *City of Oakland v. Hassey* (2008) 163 Cal.App.4th 1477, 1494, fn. 13.)

The second amended complaint alleged that defendants (and all of them) "wrongfully, intentionally, unlawfully and harmfully gave to Plaintiff the incorrect medication" and that they "acted with the intent to make a contact with Plaintiff and intended to cause or to place Plaintiff in a harmful and/or an offensive manner [*sic*]. To the extent this conduct was not intentional, said conduct was extremely reckless." She further alleged that defendants acted "willfully, recklessly, maliciously and negligently" in providing her with the wrong drug, and that it was "foreseeable" that plaintiff could suffer damages "and [could] suffer an offensive touching/physical impact from taking the wrong Drug B."

Conspicuously absent from the second amended complaint is any factual allegation of an actual harmful or offensive touching by any of the defendants. Plaintiff's attorney argued at the hearing on the demurrer, "It's not about just touching. It's about causing a touching." We gather her theory was Walgreen's provision of the wrong prescription caused her to black out, which caused the car accident, which in turn constituted a harmful touching.

But plaintiff ignores the intent requirement. As indicated above, even if one is harmfully touched, no battery has occurred unless the defendant *intended* for a harmful or offensive touching to occur or acted with reckless disregard of that possibility. Plaintiff alleged no facts from which an intent to cause a harmful touching may be inferred or facts showing reckless disregard amounting to a battery. The court below called plaintiff's theory "absolutely preposterous." We agree that the alleged provision of the wrong medicine simply does not amount to a cause of action for battery based on a car accident that occurred days or weeks later. (Cf. *Massey v. Mercy Medical Center Redding* (2009) 180 Cal.App.4th 690, 698 ["a medical act performed without a patient's informed consent . . . is medical negligence, not battery"].)

Plaintiff's ninth cause of action for intentional infliction of emotional distress would ordinarily be governed by a two-year statute of limitations. (§ 335.1; *Pugliese v.*

13

*Superior Court* (2007) 146 Cal.App.4th 1444, 1450.) The trial court disposed of this cause of action also because it was an intentional tort and plaintiff had not alleged "any element of intent or facts from which it can be inferred." Thompson claims this cause of action does not require intent, but may be based on " '[reckless] disregard of the probability of causing[] emotional distress.' "

While that much is true (CACI No. 1600), we find her allegation of "outrageous" conduct insufficient to withstand a demurrer. The elements of a cause of action for intentional infliction of mental distress are: (1) the defendant engaged in extreme and outrageous conduct with the intent to cause, or with reckless disregard for the probability of causing, emotional distress; (2) the plaintiff suffered extreme or severe emotional distress; and (3) the defendant's extreme and outrageous conduct was the actual and proximate cause of the plaintiff's extreme or severe emotional distress. (*So v. Shin*, *supra*, 212 Cal.App.4th at p. 671.) "Outrageous conduct" is conduct that is intentional or reckless and so extreme as to exceed all bounds of decency, so that a reasonable person would regard it as intolerable in a civilized community. (*Ibid.*; CACI No. 1602.)

Again, Thompson's cause of action for intentional infliction of emotional distress incorporated all preceding paragraphs in the second amended complaint as its factual basis and then alleged in conclusory fashion that those facts constituted "extreme and outrageous conduct" and did, in fact, cause Thompson severe emotional distress. We do not blindly accept as true the conclusory allegation that defendant's conduct was extreme and outrageous; rather, we may decide it does not suffice as a matter of law. (*Moncada v. West Coast Quartz Corp.* (2013) 221 Cal.App.4th 768, 781 [acts reflecting "callous disregard" of plaintiffs' interest were not sufficiently outrageous to support a cause of action for intentional infliction of emotional distress]; *McClintock v. West* (2013) 219 Cal.App.4th 540, 556; *Mintz v. Blue Cross of California* (2009) 172 Cal.App.4th 1594, 1609.)

A fair reading of the underlying facts, fully discussed above, shows no conduct that may reasonably be called "extreme and outrageous." The mistaken filling of a prescription does not amount to conduct so extreme that it goes beyond all possible

14

bounds of decency.  Thompson's allegations are insufficient to constitute a cause of action for intentional infliction of emotional distress.  (§ 430.10, subd. (e).)

### Waiver of Private Right of Action Issue:  Second and Third Causes of Action

In her second cause of action, Thompson alleged defendants violated Health and Safety Code sections 111440 and 111445.[8]  Those sections prohibit drug misbranding and are part of the Sherman Food, Drug, and Cosmetic Law (the Sherman Law).  (Health & Safety Code, §§ 109875–111915.)  The penalties and remedies are set forth in Health and Safety Code sections 111825–111915.  Those provisions do not include a direct private right of action.  Walgreen, therefore, argued below and again before this court that no private right of action should be implied.  The trial court decided these claims were subject to the one-year statute of limitations under section 340.5, without resolving whether a cause of action exists.

We, too, find it unnecessary to address that issue on the record before us. Thompson's attorney has not briefed this issue at all, though she clearly was on notice of defendant's position.  We consider the issue waived by plaintiff.  (See *Berger v. California Ins. Guarantee Assn.* (2005) 128 Cal.App.4th 989, 1007 [appellants waive issue on appeal by failing to support it with argument or citation of authority]; *San Mateo County Coastal Landowners' Assn. v. County of San Mateo* (1995) 38 Cal.App.4th 523, 559 [same]; *Dills v. Redwoods Associates, Ltd.* (1994) 28 Cal.App.4th 888, 890, fn.1 [passing reference in brief insufficient; court will not develop appellant's arguments for him or her].)  Consequently, we uphold the trial court's order on the demurrer to the second cause of action because plaintiff has not borne her burden of showing error on appeal.  (*Brown v. Crandall* (2011) 198 Cal.App.4th 1, 8; *Schaeffer v. County of Santa Clara* (1984) 155 Cal.App.3d 901, 906.)

---

[8] Health and Safety Code section 111440 provides:  "It is unlawful for any person to manufacture, sell, deliver, hold, or offer for sale any drug or device that is misbranded."

Health and Safety Code section 111445 provides:  "It is unlawful for any person to misbrand any drug or device."

Likewise, plaintiff's third cause of action for violation of Business and Professions Code sections 4059, subdivision (a),[9] and 4078, subdivision (a),[10] was properly subject to demurrer and dismissal because those sections also do not expressly provide a private right of action. Again, plaintiff's attorney included no briefing on the issue, although it was raised by Walgreen in the trial court and in this court.

The code sections referred to are found in division 2, chapter 9 of the Business and Professions Code. The State Board of Pharmacy (the Board) is established under that chapter, and is vested with "the administration and enforcement of this chapter." (Bus. & Prof. Code, §§ 4001, subd. (a), 4011.) Business and Professions Code section 4005 empowers the Board to adopt rules and regulations as may be necessary for the protection of the public and for the "proper and more effective enforcement and administration" of the chapter, including those regulating the practice of pharmacy and those "pertaining to establishments wherein any drug or device is compounded, prepared, furnished, or dispensed."

Walgreen urges us to find no implied right of action exists, citing *Alexander v. Sandoval* (2001) 532 U.S. 275, 290 ["The express provision of one method of enforcing a substantive rule suggests that Congress intended to preclude others," particularly private rights of action]. "It is also an 'elemental canon' of statutory construction that where a statute expressly provides a remedy, courts must be especially reluctant to provide additional remedies." (*Karahalios v. Federal Employees* (1989) 489 U.S. 527, 533; *Transamerica Mortgage Advisers, Inc. v. Lewis* (1979) 444 U.S. 11, 19 [same].)

---

[9] Business and Professions Code section 4059, subdivision (a) reads: "A person may not furnish any dangerous drug, except upon the prescription of a physician, dentist, podiatrist, optometrist, veterinarian, or naturopathic doctor pursuant to Section 3640.7. A person may not furnish any dangerous device, except upon the prescription of a physician, dentist, podiatrist, optometrist, veterinarian, or naturopathic doctor pursuant to Section 3640.7."

[10] Business and Professions Code section 4078, subdivision (a) provides: "(1) No person shall place a false or misleading label on a prescription. [¶] (2) No prescriber shall direct that a prescription be labeled with any information that is false or misleading."

We see no basis for implying a private right of action, especially without some briefing on the matter from plaintiff's attorney.  Rather than reach the merits, however, we find Thompson has waived any argument that a private right of action may be asserted under the cited sections, and we affirm the court's order sustaining the demurrer to that cause of action.

### *Lack of Standing:  Eighth Cause of Action*

The court also called the eighth cause of action for a violation of the unfair competition law (UCL) (Bus. & Prof. Code, section 17200 et seq.)[11] an "intentional tort" and sustained the demurrer on that basis.  Plaintiff's counsel argued the UCL "does not have an intent requirement" during the hearing on the demurrer.  The court agreed, but said, "the crimes that have to tether to it do."  The court appears to have been referring to a requirement of intent in the commission of the underlying act which constitutes an "unlawful, unfair or fraudulent business act or practice" under the UCL.[12]

---

[11] Business and Professions Code section 17200 provides as follows:  "As used in this chapter, unfair competition shall mean and include any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising and any act prohibited by Chapter 1 (commencing with Section 17500) of Part 3 of Division 7 of the Business and Professions Code."

[12] A violation of the UCL does not require intent to injure and imposes strict liability for unfair business practices.  (*Cortez v. Purolator Air Filtration Products Co.* (2000) 23 Cal.4th 163, 181 (*Cortez*).)  But if the alleged violation is based on a violation of another law (such as those cited in the second and third causes of action), a defense to the underlying offense is a defense under the UCL.  (*People v. Duz-Mor Diagnostic Lab.* (1998) 68 Cal.App.4th 654, 673; *People ex rel. Van de Kamp v. Cappuccio, Inc.* (1988) 204 Cal.App.3d 750, 763.)  Hence, it would appear that if intent were required for violation of the underlying drug dispensing and labeling statutes, intent would also constitute an element of the UCL violation.  It is not clear, however, that any intent would be required to constitute a violation of the statutes cited by plaintiff.  (Health & Saf. Code, §§ 111440, 111445; Bus. & Prof. Code, §§ 4059, 4078; see *People v. Stuart* (1956) 47 Cal.2d 167, 172–173 [violation of public welfare laws, including predecessor to Health & Saf. Code, § 111440, is subject to strict liability].)  We need not wander farther into this thicket, as we find lack of standing an adequate basis for resolving the issue before us.

17

Under the UCL, plaintiffs may "borrow" a statute that has been violated and use that as a basis for a cause of action under the "unlawful" prong of the UCL. This may be done even if the borrowed statute does not itself give rise to a private right of action, so long as it does not affirmatively bar relief or provide a "safe harbor" for the complained of activity. (*Zhang v. Superior Court* (2013) 57 Cal.4th 364, 376–377 (*Zhang*).)

Plaintiff's second amended complaint alleged the UCL violation by borrowing the regulatory statutes cited as the basis for the second and third causes of action. The statute of limitations under the UCL is four years (Bus. & Prof. Code, § 17208), and that limitations period generally "trumps" the limitations period applicable to the underlying statutory or regulatory violation. (Stern, Bus. & Prof. C. § 17200 Practice (2014) § 5:292, p. 5-86; see also *Cortez, supra*, 23 Cal.4th at pp. 178–179.) If this general rule were applied, and if plaintiff had adequately pled a UCL cause of action, then there might be reason to question the trial court's order sustaining the demurrer to this cause of action on statute of limitations grounds.

But Walgreen challenges on appeal, as it did in the trial court, plaintiff's standing to assert this cause of action at all due to her failure to plead an *economic injury* as a result of Walgreen's allegedly unlawful or unfair business practices.[13] Because we conclude the demurrer could properly be sustained on that ground, we do not address the issue of intent or the role played by the UCL four-year statute of limitations.

The purpose of the UCL is to protect both consumers and competitors by promoting fair competition in commercial markets for goods and services. (*Kwikset Corp. v. Superior Court* (2011) 51 Cal.4th 310, 320 (*Kwikset*).) Since the passage of Proposition 64 in 2004, an "injury in fact"—specifically an economic injury—has been

---

[13] Lack of standing is a proper basis for granting a general demurrer, as it amounts to a claim that "[t]he pleading does not state facts sufficient to constitute a cause of action." (§ 430.10, subd. (e); *Friendly Village Community Assn., Inc. v. Silva & Hill Constr. Co.* (1973) 31 Cal.App.3d 220, 224; *Oakland Municipal Improvement League v. City of Oakland* (1972) 23 Cal.App.3d 165, 170–171.) Hence, if plaintiff did lack standing, we must affirm.

18

required to vest a private plaintiff with standing. (*Kwikset, supra,* at p. 322; *Folgelstrom v. Lamps Plus, Inc.* (2011) 195 Cal.App.4th 986, 993.)

Thompson, of course, claims she sustained an economic injury. Granted, she alleged economic *damages* as a result of her physical injury, comprised of medical expenses and lost wages. However, those economic losses were specifically tied to her physical injury in the car accident and perhaps to her continuing addiction. The Supreme Court has recognized that "economic injury and physical injury are 'qualitatively different' types of injury." (*Pooshs v. Philip Morris USA, Inc.* (2011) 51 Cal.4th 788, 795.) Plaintiff's alleged economic damages are not the kind of "economic injury" contemplated by the UCL.

Remedies available under the UCL include injunctive relief and restitution, but do not include compensatory damages, punitive damages, or attorney fees. (*Zhang*, *supra*, 57 Cal.4th at p. 371; *Pineda v. Bank of America, N.A.* (2010) 50 Cal.4th 1389, 1402, fn. 14; *Cortez, supra*, 23 Cal.4th at p. 173.) As the Supreme Court has recently reaffirmed, "Restitution under [Business and Professions Code] section 17203 is confined to restoration of any interest in 'money or property, real or personal, which may have been *acquired* by means of such unfair competition.' (Italics added.) A restitution order against a defendant thus requires both that money or property have been lost by a plaintiff, on the one hand, *and that it have been acquired by a defendant*, on the other." (*Zhang*, *supra*, 57 Cal.4th at p. 371, second emphasis added.)

The limited remedies provided by the UCL inform our understanding of the nature of the "economic injury" that must be alleged by a plaintiff in order to acquire standing to assert a consumer's right of action under the UCL. Here, plaintiff alleged damages, but did not allege that any of the money she lost was acquired by Walgreen or the Doe defendants. She did not even allege that she paid for her prescription. The fact that she was injured in a car accident and as a result incurred medical expenses and lost wages does not establish the kind of "economic injury" required to state a cause of action under the UCL. The demurrer to this cause of action was properly sustained.

19

### *Denial of Leave to Amend*

We review the decision to deny plaintiff leave to file an amended pleading under the deferential abuse of discretion standard. (*San Mateo Union High School Dist.*, *supra*, 213 Cal.App.4th at p. 441; *Cantu*, *supra*, 4 Cal.App.4th at pp. 889–890.) " '[G]reat liberality should be exercised in permitting a plaintiff to amend . . . .' [Citations.] 'If there is any reasonable possibility that the plaintiff can state a good cause of action, it is error to sustain a demurrer without leave to amend.' " (*Sanai v. Saltz* (2009) 170 Cal.App.4th 746, 768; see also *Fox*, *supra*, 35 Cal.4th at p. 810.) Still, it is the plaintiff's burden to show a reasonable possibility of successful amendment. (*Hendy v. Losse* (1991) 54 Cal.3d 723, 742; *Cantu*, *supra*, 4 Cal.App.4th at p. 890.) "To meet this burden, a plaintiff must submit a proposed amended complaint or, on appeal, enumerate the facts and demonstrate how those facts establish a cause of action." (*Cantu*, *supra*, at p. 890.) In this instance, plaintiff has not carried that burden.

Conclusory allegations, and especially unexplained contradictory factual allegations, will not suffice. (*Evans v. City of Berkeley* (2006) 38 Cal.4th 1, 6, 20 ["demurrer assumes the truth of the complaint's properly pleaded allegations, but not of mere contentions or assertions contradicted by judicially noticeable facts"]; *Blank v. Kirwan* (1985) 39 Cal.3d 311, 318.) Thus, the reviewing court will consider "facts that may be judicially noticed. [Citation.] Indeed, when the allegations of the complaint contradict or are inconsistent with such facts, [the court will] accept the latter and reject the former." (*Blatty v. New York Times Co.* (1986) 42 Cal.3d 1033, 1040.)

"A plaintiff may not avoid a demurrer by pleading facts or positions in an amended complaint that contradict the facts pleaded in the original complaint or by suppressing facts which prove the pleaded facts false. [Citation.]" (*Cantu*, *supra*, 4 Cal.App.4th at p. 877; see also *Hendy v. Losse*, *supra*, 54 Cal.3d at p. 742.) In such circumstances a reviewing court may take judicial notice of the earlier pleaded facts[14]

---

[14] In a separately filed motion concurrent with its demurrer, Walgreen asked the trial court to take judicial notice of the previously filed complaint and first amended complaint. The court did not rule on that request. We take judicial notice of the prior

and, absent an explanation for the inconsistency, will read the original defect into the amended complaint, rendering it vulnerable to demurrer again. (*Hendy v. Losse, supra*, at p. 743; accord, *Brown v. Crandall* (2011) 198 Cal.App.4th 1, 8; *Deveny v. Entropin, Inc.* (2006) 139 Cal.App.4th 408, 425–426.) A "trial court has discretion to deny leave to amend when the proposed amendment omits or contradicts harmful facts pleaded in a prior pleading unless a showing is made of mistake or other sufficient excuse for changing the facts. Absent such a showing, the proposed pleading may be treated as a sham." (*Sanai v. Saltz, supra*, 170 Cal.App.4th at p. 768; see also *McClain v. Octagon Plaza, LLC, supra*, 159 Cal.App.4th at p. 792.)

In this case, we need not look far to find inconsistencies and unexplained omissions. The first amended complaint expressly alleged that Walgreen and the Doe defendants "owed duties to Plaintiff as health care providers." This allegation was pointed out by the court in ruling on the demurrer to the first amended complaint. Although Thompson dropped the allegation from her second amended complaint, she included no explanation for the change, and we suspect she did so in an effort to "plead around" the bar of the statute of limitations. (Cf. *Henry v. Clifford* (1995) 32 Cal.App.4th 315, 322–323.)

The complaint has already been amended twice. The previous demurrers both were grounded in large part on the statute of limitations under section 340.5, and Walgreen's supporting memorandum pointed out other deficiencies in the earlier complaints. The deficiencies were also noted by the court in ruling on the demurrer to the first amended complaint. Plaintiff's counsel complains at some length about the court's failure to give her adequate guidance as to how she needed to amend her complaint, but it is not the court's obligation to educate counsel or to instruct them on how to litigate their cases. Moreover, we find the court gave her advice that she refused

complaints on our own motion. (Evid. Code, §§ 452, subd. (d), 459, subd. (a).) We deem notice unnecessary under Evidence Code section 459, subdivision (c).

21

to take.[15]  Likewise, her complaint that she had only one opportunity to argue orally against the demurrer is of no consequence.

The fundamental defect is that plaintiff's theory of recovery is barred by the statute of limitations.  There is no reasonable possibility she will be able to overcome that defect with one more opportunity to amend.  The court did not abuse its discretion in denying her that privilege.

### Dismissal of Action Against Doe Defendants

Thompson named 51 Doe defendants:  John Doe and Does 1 through 50.  (§ 474.) She alleged on information and belief that John Doe was the pharmacy technician who improperly dispensed the wrong drug and Doe 1 was the supervising pharmacist.  In the very next sentence, however, she alleged John Doe "was a regular employee" or agent of Walgreen and was "neither a Pharmacy Technician nor a Pharmacist."  In the latter capacity she claimed his action in filling the prescription was not that of a health care provider, but rather was "ministerial" in nature.  The allegations about John Doe flatly contradicted each other.  With respect to the other Doe defendants, Thompson claimed

---

[15] Plaintiff claims the court gave her only "one sentence" of advice in ruling on the demurrer to the first amended complaint.  The judge, in fact, gave plaintiff's counsel quite a bit of advice:  "Plaintiff will be afforded an opportunity to attempt to plead a viable cause of action against this Defendant. . . .  [¶] [T]he Court notes that most of the facts recited in Plaintiff's Opposition memorandum cannot be found in the [first amended complaint] and the Court questions if the pleading can be amended to address the legal insufficiencies, in particular, the statute of limitations defense.  [¶] In a section of her [first amended complaint] titled 'Facts Common to All Causes of Action,' Plaintiff alleges at paragraph 13 that the Defendants and each of them owed duties to Plaintiff as health care providers. . . .  This allegation is incorporated into each cause of action. . . . Plaintiff has failed to plead an injury caused by Defendant's conduct within the limitations period.  [Citations.]"  The court also referred plaintiff's counsel to section 425.10, subdivision (a)(1), which requires that complaints give a "statement of the facts constituting the cause of action, in ordinary and concise language."  Finally, the court granted Walgreen's motion to strike the allegation of punitive damages, with leave to amend (§ 425.13) and her allegation of damages "in excess of $2,000,000" without leave to amend (§ 425.10, subd. (b)).  Despite these warnings, plaintiff filed a second amended complaint containing many of the same defects, including the allegation of $2 million in damages, which she had explicitly been ordered to omit.

only that they "wrongfully gave Plaintiff the incorrect medication, that ultimately caused injuries to Plaintiff," thus giving rise to an inference that they were some sort of health care providers.

True, the demurrer was brought only by Walgreen. Plaintiff, therefore, argues the court erred in dismissing the entire action, rather than simply dismissing it against Walgreen. She cites no authority prohibiting such a dismissal.

If John Doe was a pharmacy technician he would have been required to be licensed under Business and Professions Code sections 4115, subdivision (e), hence, section 340.5 would apply to him. (See also Bus. & Prof. Code, § 4038.) Doe 1 was also described in the first and second amended complaints as a "licensed pharmacist" who supervised John Doe. The allegations about John Doe and Doe 1 would seem to eliminate any successful amendment to make the causes of action against at least those two fictitiously named defendants any more viable than they were against Walgreen.

During the hearing on the demurrer, the court remarked in passing that plaintiff might continue to have a cause of action against the Doe defendants, even if Walgreen's demurrer was sustained. Plaintiff seems to argue the court was somehow bound to adhere to its remark. For its part, Walgreen claims plaintiff waived any such argument by failing to object when the written order was submitted for the judge's approval, or when the notice of the court's order was filed and served. We find the argument was not waived and address the merits.

In some circumstances it might be inappropriate to dismiss Doe defendants upon a demurrer by a named defendant. After all, a complaint may be maintained against only fictitiously named defendants. (*Pearlson v. Does 1 To 646* (1999) 76 Cal.App.4th 1005, 1010; *Wallis v. Southern Pac. Transportation Co.* (1976) 61 Cal.App.3d 782, 784–785.) Hence, the dismissal of the complaint against Walgreen would not necessarily result in its dismissal against the Doe defendants.

But, here, plaintiff's allegations against the Doe defendants ascribe to them no role that would take them out of the definition of health care providers. They were all alleged to be Walgreen employees. Any professional negligence or negligence-based action

23

against them would be time-barred to the same extent it is barred against Walgreen. Because the other causes of action failed to state facts necessary to maintain them, we discern no error in the court's dismissal of the action in its entirety.

## DISPOSITION

The judgment is affirmed.

_____
Becton, J.*

We concur:

_____
Margulies, Acting P.J.

_____
Dondero, J.

* Judge of the Contra Costa County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.